**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**INTERNATIONAL GUARDS
UNION OF AMERICA, LOCAL #106**,

      Plaintiff,

      vs.                         No. 07-CV-523 MCA/ACT

**C&D SECURITY, INC. and THE UNITED
STATES DEPARTMENT OF THE ARMY,**

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Defendant C&D Security, Inc.'s Motion to Dismiss* [Doc. 15], filed July 2, 2007, and the *United States' Response in Opposition to Plaintiff's Verified Petition for Declaratory Relief and/or Preliminary Injunction* [Doc. 18], filed July 3, 2007 and construed, in part, as a motion to dismiss for lack of subject matter jurisdiction.[1] Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants both motions and dismisses the *Verified Petition* for lack of subject matter jurisdiction.

**I. BACKGROUND**

On May 25, 2007, Plaintiff International Guards Union of America, Local 106 ("the

---

[1] At a July 5, 2007 hearing on this matter, the Court, counsel for Plaintiff, and counsel for the United States agreed that the *United States' Response in Opposition to Plaintiff's Verified Petition for Declaratory Relief and/or Preliminary Injunction* would be treated, in part, as a motion to dismiss for lack of subject matter jurisdiction.

Union") filed a *Verified Petition for Declaratory Relief and/or Preliminary Injunction* pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LRMA"), against Defendants C&D Security, Inc. ("C&D") and the United States Department of the Army ("the Army"). [Doc. 1]. Under Governmental Contract DATM05-02-C-0057 ("the Governmental Contract"), effective September 1, 2002, C&D contracts with the Army to provide civilian security services at the White Sands Missile Range ("White Sands"). The Union is the exclusive bargaining agent for C&D employees below the rank of Lieutenant stationed at White Sands. On October 10, 2004, the Union and C&D executed a *Collective Bargaining Agreement* ("CBA").

The CBA provides, in pertinent part, that as a condition of employment and retention, each uniformed employee is subject to an Individual Reliability Program ("IRP"), the purpose of which "is to provide a means of assessing the reliability of individuals considered for employment and to provide a means of continuous assessment of personnel assigned to security guard positions." [Doc. 1; Exh. A, *Collective Bargaining Agreement* ¶ 19.3.2]. The Governmental Contract incorporates a *Performance Work Statement*, which provides, in pertinent part, that "[p]hysical agility testing will be administered annually per AMC Supplement 1 to AR 190-56 (Appendix D). All uniformed contractor security force personnel positions will be defined as physically active." [Doc. 19; Exh. 2 ¶ C.5.1.2.4.4]. On September 27, 2006, AR 190-56[2] underwent a major revision whereby, among other

---

[2] Army Regulation 190-56 is titled *The Army Civilian Police and Security Guard Program.*

things, physical agility testing was made a requirement for all Army civilian police and security guards.

Years before the revision, however, Captain Odell C. Jenkins, Site Manager for C&D, had asked Chief Contracting Officer ("CCO") Cheryl A. Cretin to clarify which civilian security force guards were required to pass the physical agility test ("PAT"). According to the Union, civilian security guards at White Sands had not been made to take and pass a PAT in the last 30 years. In any case, in correspondence dated October 9, 2002, CCO Cretin informed Captain Jenkins that "[s]ecurity personnel hired prior to 30 September 2002 are grandfathered from taking a physical agility test as long as the employee remains a member of the security force." [Doc. 1; Exh. B]. In light of CCO Cretin's representation, Captain Jenkins made a post-revision request to have the PAT waived. In an email message dated January 9, 2007, Army Contract Officer Representative ("COR") Carolina Childress denied Captain Jenkins's request, explaining that

> [t]he physical agility test under the old AR 190-56 should not have been grandfathered for C&D security guards.
>
> The requirement was grandfathered to accommodate the DA guards that were changing series from 085 guard series to 083 police series. The DA guards and DA Police Officers that were grandfathered under the old AR 190-56 are now being required to meet the physical agility test under the revised AR 190-56.
>
> Contract states requirements of AR 190-56 will be adhere[d] to in complying with the Individual Reliability Program (IRP). In order to comply with the contract requirements the physical agility test needs to be performed and passed by all security guards and supervisors.

3

[Id.; Exh. C]. On March 28, 2007, Captain Jenkins sent a memorandum to "[a]ll [u]niformed [e]mployees" explaining that they would be required to take and pass the PAT and that there would be no grandfathering. [Doc. 1; Exh. D].

In its *Verified Petition*, the Union contends that through COR Childress's January 9, 2007 email, the Army breached the promise made by CCO Cretin in her October 9, 2002 correspondence that security personnel hired before September 30, 2002 would not be made to take and pass the PAT. The Union further asserts that C&D participated in the Army's breach by informing guards that they would be required to pass the PAT and in taking the position that those who do not pass will be terminated. [Doc. 1 at 3-4]. As relief the Union seeks a preliminary injunction,[3] as well as a declaration

> that the Department of the Army and C&D Security will breach the Collective Bargaining Agreement and their promise not to impose the PAT on pre-September 30, 2002 hires should they choose to implement the new PAT and terminate any pre-September 30, 2002 hires based on their performance in the PAT[.]

[Id. at 5].

C&D now moves to dismiss on grounds that (1) the Court lacks subject matter jurisdiction under the LMRA because the Union has failed to allege the breach of a labor contract; (2) injunctive relief is prohibited by the Norris-LaGuardia Act, 29 U.S.C. §§ 101-

---

[3] In response to the Union's request that the Court "[s]chedule an emergency hearing on the merits of a Preliminary Injunction Order" [Doc. 1 at 5], the Court convened on July 5, 2007 for that purpose. [See Doc. 20]. The parties did not discuss or argue the merits of a preliminary junction at that time, however, because it became apparent that there existed jurisdictional questions requiring resolution.

115; and (3) the Union has failed to exhaust contractual remedies of grievance resolution and arbitration. [Docs. 15, 16]. With respect to its first argument, C&D notes that the Union has not alleged breach of the CBA but, instead, a breach of CCO Cretin's assurance that security guards hired prior to September 30, 2002 would not be required to take and pass the PAT. [Doc. 16 at 3]. According to C&D, therefore, "Plaintiff's failure to allege a specific breach of a contract falling within the purview of the LMRA precludes federal jurisdiction in this mater." [Id.]. The Army also moves to dismiss, arguing, in pertinent part, that subject matter jurisdiction is lacking because while the LMRA governs suits for violations of contracts between employers and labor organizations, the Army is not an employer here. [Doc. 18 at 6-7].

## II. ANALYSIS

The Union admits that it has not alleged a breach of the CBA. [Doc. 22 at 4 ("Plaintiff here has not alleged a breach of the Collective Bargaining Agreement between the labor Union and the employer.")]. It argues instead that "the terms of the Collective Bargaining Agreement will require Defendant C&D Security to fire a number of Union members should the third-party defendant Department of the Army . . . be allowed to renege on its promise to refrain from imposing the PAT on pre-September 30, 2002 hires." [Id.]. It is Plaintiff's position that the Court will be unable to reach a decision on the propriety of a preliminary injunction or declaratory relief without looking to the language of the CBA, "specifically Sections 19.3.1 and 19.3.2, which may require the company to terminate the employment of some members of the . . .Union should an injunction not be issued." [Id.]. The Union

contends that where, as here, the claims presented are substantially dependent on an analysis of the CBA, subject matter jurisdiction exists under § 301 of the LMRA.[4] [Id.]. In support of its argument, the Union relies upon and has directed the Court to the following three United States Supreme Court cases—Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); Int'l Broth. of Elec. Workers, AFL-CIO v. Hechler, 481 U.S. 851 (1987); and Caterpillar Inc. v. Williams, 482 U.S. 386 (1987).

In Allis-Chalmers, the Supreme Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp., 471 U.S. at 220. In that case, the plaintiff, an Allis-Chalmers employee and union member, brought a Wisconsin state-court action against Allis-Chalmers and Aetna Life & Casualty, alleging bad faith in the handling of his requests for nonoccupational-injury disability benefits to which he claimed entitlement under the terms of a collective bargaining agreement between his union and Allis-Chalmers. Although bad-faith handling of an insurance claim is a tort under the

---

[4] This statutory section provides that

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

state law of Wisconsin, the trial court entered judgment for the defendants, concluding that the plaintiff's claim arose under § 301; alternatively, if the claim were deemed to arise under state law instead of § 301 it was preempted by federal labor law. The Wisconsin Court of Appeals affirmed, but the Supreme Court of Wisconsin reversed. It reasoned that a § 301 claim arises out of a violation of a labor agreement, whereas the plaintiff before it had asserted the tort of bad faith. The tort of bad faith, the court continued, results in a breach of duty that is independent of the contract; therefore, any labor-contract violation would have been irrelevant to the issue of whether the defendants had exercised bad faith in handling the plaintiff's claim. For that reason, the court held that the claim was not a § 301 claim. Id. at 203, 206.

The issue before the United States Supreme Court was whether § 301 preempts a state-law tort action for bad-faith delay in making disability-benefit payments due under a collective bargaining agreement. Allis-Chalmers Corp., 471 U.S. at 208. The Court held that the state-law tort claim was preempted, since

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

Id. at 211. Because § 301 exists to ensure the application of a uniform federal labor law, it is important that its preemptive reach extend beyond breach-of-contract claims alone. Id. at 210. Still, § 301 does *not* preempt state rules or laws that, among other things, establish

7

rights and obligations that are independent of a labor contract. Id. at 213. Conversely, state-law rights and obligations that do *not* exist independently of private agreements and can therefore be waived or altered by agreement of private parties are preempted by those agreements. Consequently, the precise focus of the Court in Allis-Chalmers was narrowed to this:

> [W]hether the Wisconsin tort action for breach of the duty of good faith as applied here confer[red] nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim [was] *inextricably intertwined* with consideration of the terms of the labor contract.

Id. at 213 (emphasis added). The Wisconsin tort law would be preempted if it purported to define the meaning of the parties' contractual relationship. Id.

The Court concluded that it was a question of federal contract interpretation whether there was an obligation under the parties' labor contract to provide disability payments in a timely manner and, if so, whether Allis-Chalmers's conduct breached any such implied contract provision. Allis-Chalmers Corp., 471 U.S. at 215. Recognizing two duties—an implied duty to act in good faith and the explicit contractual duty to pay—the Court nevertheless reasoned that because "the extent of either duty ultimately depend[ed] upon the terms of the agreement between the parties, both [were] tightly bound with questions of contract interpretation that must be left to federal law." Id. at 216. That the plaintiff's asserted cause of action for bad-faith handling of his insurance claim was inextricably intertwined with the terms of and rights and obligations under the collective bargaining

8

agreement was evidenced by the fact that the tort existed to remedy the breach of duty implied from the express terms of a contract, "the scope of which, crucially, [was] 'ascertained from a consideration of the contract itself.'" Id. (*quoting* Hilker v. Western Automobile Ins. Co., 235 N.W. 413, 415 (1931)). In reality, the Wisconsin tort asserted by the Allis-Chalmers plaintiff is nothing more than a way to plead a certain kind of contract violation in tort in order to recover exemplary damages. See Anderson v. Continental Ins. Co., 271 N.W.2d 368, 374 (Wis. 1978) ("By virtue of the relationship between the parties created by the contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages."). Because contracting parties in Wisconsin may bargain over what reasonable performance of their obligations entails, the Allis-Chalmers plaintiff's tort claim was "firmly rooted in the expectations of the parties that must be evaluated by federal contract law." Allis-Chalmers Corp., 471 U.S. at 217.

Two years later, the Supreme Court in Hechler was faced with the issue whether a state-law tort claim that the plaintiff's union had breached its duty of care to provide her with a safe workplace was sufficiently independent of the parties' collective bargaining agreement to withstand § 301 preemption. Hechler, 481 U.S. at 853. After reviewing Allis-Chalmers, the Court noted that the common-law duty to exercise reasonable care to provide a safe workplace runs to an employer (in this case, Florida Power), not a union, though a union could assume such a duty through contract. Additionally, Florida law allowed for an aggrieved party to bring either an action for breach of contract or a tort claim for injuries sustained as a result of any contractual breach. Hechler, 481 U.S. at 859-860. The Court

9

summarized the plaintiff's complaint:

> [Hechler] asserts that "pursuant to contracts and agreements" between the Union and Florida Power, "to which contracts and agreements the Plaintiff was a third-party beneficiary," the Union owed [Hechler] a duty of care to ensure her a safe working environment. Having assumed this duty under the collective-bargaining agreement, the Union—according to the complaint—was then negligent "by allowing [Hechler] to be assigned to work in . . . a dangerous location and environment and by failing to provide her with or ascertaining that she had the necessary training, experience, background, and education to work in such a dangerous environment," and was further negligent in failing to "provid[e] and/or enforc[e] safety rules, regulations and requirements which would preclude such persons with inadequate and insufficient background, training, education, and experience, such as [Hechler], . . . from being placed in such an inherently dangerous working environment."

Id. at 861.  Noting that the collective bargaining agreement, as well as other agreements between the parties, included provisions on safety and working requirements for electrical apprentices such as the plaintiff, the Court stressed that the plaintiff's "allegations of negligence assume significance if—and only if—the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached."  Id.  In order to determine any tort liability on the part of the union, therefore, it would be necessary to ascertain whether the collective bargaining agreement imposed on the union a duty of care to ensure the plaintiff was provided a safe workplace and, if so, the nature and scope of that duty.  The state-law claim in Hechler, therefore, was preempted by § 301 because, as was the case in Allis-Chalmers, the determination of any tort liability was dependent upon consideration and interpretation of the collective bargaining agreement.  See id. at 861-862.

Standing in contrast to Allis-Chalmers and Hechler is Caterpillar, where the plaintiffs' state-law claims were deemed not to be completely preempted by § 301. In Caterpillar, the Supreme Court held that the employer's removal to federal court was improper where the plaintiffs/former employees, "[a]s masters of the complaint," had set forth claims arising under state law for breach of individual employment contracts. Caterpillar Inc., 482 U.S. at 395, 396. The Court rejected the argument that those state-law claims were "in reality completely pre-empted § 301 claims" arising under federal law, reasoning that the plaintiffs' complaint (1) was not substantially dependent upon an interpretation of the parties' collective bargaining agreement; (2) did not rely upon the collective bargaining agreement indirectly; and (3) did not address the relationship between the individual contracts and the collective bargaining agreement. The Court further explained that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Id. at 395 (*quoting* Hechler, 481 U.S. at 859 n. 3). Because this description did not apply to the claims of the Caterpillar plaintiffs, their claims were not preempted by § 301 and their action should not have been removed. See id. at 396-397 n. 10 ("Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301.").

The instant case involves neither preempted state-law claims nor improper removal. Instead, in this case, the Union asserts that

> the terms of the [CBA] will require Defendant C&D Security to

> fire a number of Union members should the third-party defendant Department of the Army (a third-party defendant like the third-party insurance company in Allis-Chalmers) be allowed to renege on its promise to refrain from imposing the PAT on pre-September 30, 2002 hires.

[Doc. 22 at 4].[5] Unlike the situations in Allis-Chalmers and Hechler, however, where the contours of the alleged violations were delimited by the scope of the parties' relationship as defined by the terms of the collective bargaining agreements, the alleged violation here—the Army's breach of CCO Cretin's grandfathering assurance—can be evaluated and assessed without reference to the CBA.[6] *Cf.* Hechler, 481 U.S. at 859 n.3 (emphasizing that § 301 governs claims founded directly on rights created by collective bargaining agreements, as well as those that are *substantially dependent upon analysis of a collective bargaining agreement*) (emphasis added). For that reason, this case is more akin to Caterpillar, where the plaintiffs "allege[d] that Caterpillar ha[d] entered into and breached *individual* employment contracts with them." Caterpillar, 482 U.S. at 394 (emphasis in original). The substance of those alleged agreements was Caterpillar's continual and repeated promises that the plaintiffs, who were laid off when their plant closed, "could look forward to indefinite and lasting employment with [Caterpillar] and that they could count on [Caterpillar] to take

---

[5] The Court questions the Union's characterization of the Army as a third-party defendant. The Army was not brought into this action by C&D but, instead, was an originally named party in the *Verified Petition*. [See Doc. 1]. The Army therefore is a co-defendant and not a third-party defendant. See Fed.R.Civ.P. 14(a).

[6] Or, to put it another way, the so-called "independent" claims set forth by the plaintiffs in Allis-Chalmers and Hechler would not have existed in the absence of the collective bargaining agreements. By contrast, the claim of the Army's alleged wrongdoing in this case can (and does) stand separate and apart from the CBA.

care of them." Id. at 388. The plaintiffs insisted (much like the Union members in the instant case) that they relied on those promises to their detriment by choosing to remain in Caterpillar's employ instead of seeking work elsewhere. See id. at 389.

The Caterpillar Court emphasized that the plaintiffs' claims were not substantially dependent upon interpretation of the collective bargaining agreement because they neither relied upon that agreement indirectly nor addressed the relationship between the individual contracts and the collective bargaining agreement. Caterpillar, 482 U.S. at 395. Moreover, the promises and assurances allegedly made to the Caterpillar plaintiffs were made while they were employed as management and/or weekly salaried employees. The plaintiffs later were downgraded to hourly positions covered by the collective bargaining agreement. Id. at 388-389. Thus, the plaintiffs were alleging breaches of agreements in which the collective bargaining agreement to which they later became subject played no part. Id. at 395 n.9.

The situation is similar here. The CBA was executed on October 10, 2004. [Doc. 1; Exh. A at 30]. CCO Cretin's representation to Captain Jenkins—that security personnel hired prior to September 30, 2002 would be grandfathered from taking and passing the PAT so long as they remained security-force members—was made 4 years earlier, on October 9, 2002. [Id.; Exh. B]. It is not necessary to consider the terms of the CBA for the purpose of determining the legal effect of CCO Cretin's statement, which was made well before the CBA came into existence. Consequently, resolution of the Union's claim that the Army breached a promise not to compel certain C&D security-force employees to take and pass the PAT is *not* substantially dependent on an analysis of the CBA. Instead, the Union's claim

13

is an example of one "bearing no relationship to a collective-bargaining agreement beyond the fact that [it is] asserted by an [entity] covered by such an agreement." Caterpillar, 482 U.S. at 396 n. 10.  The Union's *Verified Petition* must therefore be dismissed for lack of subject matter under § 301.

### III. CONCLUSION

As already explained, the Union does not contend that either C&D or the Army has breached a term of the CBA.  Rather, the Union submits that resolution of the breach it *does* allege, *i.e.*, the Army's having reneged on CCO Cretin's assurance that certain C&D security-force personnel would be grandfathered from taking and passing the PAT, is substantially dependent upon an analysis of the CBA.  For the reasons discussed more fully herein, the Court disagrees and, instead, concludes that the Union's *Verified Petition* must be dismissed for lack of subject matter jurisdiction.  Because the subject-matter-jurisdiction analysis is dispositive, the Court does not reach the other issues raised in the defendants' motions.

**IT IS, THEREFORE, ORDERED** that *Defendant C&D Security, Inc.'s Motion to Dismiss* [Doc. 15] is **GRANTED**;

**IT IS FURTHER ORDERED** that the *United States' Response in Opposition to Plaintiff's Verified Petition for Declaratory Relief and/or Preliminary Injunction* [Doc. 18], which the Court has construed, in part, as a motion to dismiss for lack of subject matter jurisdiction, is **GRANTED**;

**IT IS FURTHER ORDERED** that the *Verified Petition for Declaratory Relief and/or Preliminary Injunction* [Doc. 1] be and hereby is **DISMISSED** for lack of subject matter jurisdiction under § 301 of the LMRA.

**SO ORDERED** this 17th day of August, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge